UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRISTIE W., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C22-5348-SKV <br><br> ORDER REVERSING THE COMMISSIONER'S DECISION |

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff was born in 1968, has one year of college education, and has worked as a receptionist and office administrator. AR 152-53. Plaintiff was last gainfully employed in July 2019. AR 153.

In August 2019, Plaintiff applied for benefits, alleging disability as of July 18, 2019. AR 291-92. Plaintiff's application was denied initially and on reconsideration, and Plaintiff

ORDER REVERSING THE COMMISSIONER'S
DECISION - 1

requested a hearing.  AR 211-13, 218-26.  After the ALJ conducted a hearing in February 2021 (AR 146-76), the ALJ issued a decision finding Plaintiff not disabled.  AR 121-40.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one**:  Plaintiff has not engaged in substantial gainful activity since the alleged onset date.

**Step two**:  Plaintiff has the following severe impairments: major depressive disorder; generalized anxiety disorder; posttraumatic stress disorder; status-post left shoulder tenotomy; left shoulder calcific tendinitis and degenerative joint disease; left ulnar neuropathy status-post arthroscopic repair; and negative rheumatoid arthritis.

**Step three**:  These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity (RFC)**:  Plaintiff can perform light work with additional limitations: she can climb ramps and stairs occasionally.  She can never climb ladders, ropes, or scaffolds.  She can stoop, crouch, crawl, and kneel occasionally.  She can reach overhead bilaterally occasionally.  She can do simple, routine, repetitive tasks with up to three steps, requiring level-one or level-two reasoning abilities (as defined in the Dictionary of Occupational Titles).  She can have no public contact and occasional contact with a small group of co-workers.  She should have no exposure to extreme cold, fumes, gases, dust, odors, or other pulmonary workplace irritants.  She should have no exposure to workplace hazards.

**Step four**:  Plaintiff cannot perform her past relevant work.

**Step five**:  As there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR 121-40.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.  AR 1-6.  Plaintiff appealed the final decision of the Commissioner to this Court.  Dkt. 4.

//

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P, App. 1.

## LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

Substantial evidence is "more than a mere scintilla. It means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating symptom testimony, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## DISCUSSION

Plaintiff argues the ALJ erred in excluding fibromyalgia and a vision impairment at step two, and in discounting the medical opinion evidence, Plaintiff's testimony, and lay statements. Plaintiff also argues that evidence submitted to the Appeals Council warrants remand. The

1  Commissioner argues the ALJ's decision is free of harmful legal error, supported by substantial

2  evidence (even when the Appeals Council evidence is considered), and should be affirmed.

3        **A.**      **The ALJ Did Not Harmfully Err at Step Two**

4  At step two, a claimant must make a threshold showing that her medically determinable

5  impairments significantly limit her ability to perform basic work activities.  *See Bowen v.*

6  *Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c).  In this case, the ALJ

7  suggested that fibromyalgia was not a severe impairment (AR 123-24), and also questioned

8  whether fibromyalgia had been properly diagnosed, according to the sets of criteria set out in

9  Social Security Ruling 12-2p (AR 125-26).  Plaintiff argues that the ALJ erred in excluding

10  fibromyalgia as a severe, medically determinable impairment at step two.  Dkt. 12 at 2-3.

11  Any error in the ALJ's failure to include fibromyalgia in the list of severe impairments at

12  step two is harmless because the ALJ acknowledged Plaintiff's rheumatoid arthritis and

13  discussed Plaintiff's allegations of widespread body pain when assessing her RFC, later in the

14  decision.  *See* AR 133-35.  In evidence submitted to the Appeals Council, Plaintiff's treating

15  physician attributed Plaintiff's pain to her rheumatoid arthritis, rather than fibromyalgia.  *See* AR

16  23.  Because Plaintiff has not pointed to any allegations that the ALJ overlooked as a result of

17  excluding fibromyalgia, any error at step two is harmless.  *See Buck v. Berryhill*, 869 F.3d 1040,

18  1048-49 (9th Cir. 2017) (discussing harmless step-two errors).

19  Plaintiff also argues that the ALJ erred in finding that her vision impairment was not

20  severe because it improved after surgery and when her diabetes was controlled.  *See* AR 125.

21  Plaintiff points to one treatment note that indicates that in September 2020, even after her vision

22  had improved after surgery, her uncontrolled blood sugars caused her near vision to be 20/200.

23  Dkt. 15 at 1 (citing AR 717-19).  This treatment note is unclear if the notation referencing

Plaintiff's 20/200 near visual acuity represents her corrected or uncorrected vision, because it is listed in association with her glasses prescription rather than as examination findings, and Plaintiff complained of problems with distance rather than near vision at this appointment. AR 717-19. In any event, it does not appear that Plaintiff required ongoing treatment for any subsequent vision problems; Plaintiff was instructed to return to the clinic in one year and there is no evidence of vision-related treatment after September 2020. *Id.* Although Plaintiff testified at the hearing that she has vision problems that would both prevent her from using a computer as well as driving (AR 154), the ALJ also referenced Plaintiff's testimony that she drives once or twice a week, completes all of her shopping online, and reads books for fun (AR 152, 155-56). On this record, Plaintiff has not shown that the ALJ erred in finding that Plaintiff's vision impairment did not cause significant, ongoing workplace limitations.

      **B.**    **The ALJ Provided Legally Sufficient Reasons to Discount Plaintiff's Testimony**

The ALJ summarized Plaintiff's allegations and explained that she discounted them because: (1) Plaintiff made inconsistent statements about why she stopped working, (2) Plaintiff's mental examination findings and social activities were inconsistent with her alleged mental limitations; and (3) Plaintiff's physical conditions (elbow and shoulder conditions, vision impairment, rheumatoid arthritis, migraines) improved with treatment and/or did not cause significant limitations. AR 125, 128-36. Plaintiff contends the ALJ's reasons are not clear and convincing, as required in the Ninth Circuit. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

First, Plaintiff argues that the ALJ erred in finding that she had made inconsistent statements about why she stopped working. At the hearing, she testified that she had been making significant mistakes at work due to her fatigue and lack of focus that cost her employer a

lot of money, and she quit because she felt she could no longer perform her job. AR 153-54, 169. The ALJ noted that Plaintiff told other people contemporaneously that she experienced a toxic work environment and felt like her boss was forcing her out, and that she was considering a lawsuit related to her treatment. AR 130 (citing AR 410, 422, 513, 518-19, 525). Plaintiff contends that her explanations are consistent because the toxic work environment and deteriorating relationship with her boss were caused by the mistakes she made when she could no longer perform her job. Dkt. 12 at 5. That may be one reasonable interpretation of the evidence, but Plaintiff has not shown that the ALJ's interpretation is unreasonable. The ALJ contrasted Plaintiff's testimony (indicating that she stopped working due to her own deficits) with Plaintiff's contemporaneous reports to providers (indicating that she stopped working due to a toxic boss), and these statements can be reasonably found inconsistent. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Next, Plaintiff argues that the ALJ erred in finding that her social activities were inconsistent with her alleged limitations. The ALJ described Plaintiff as alleging that "she does not like to be around people," and contrasted that allegation with the evidence that Plaintiff talked with relatives, visited her grandfather, and took a trip to Hawaii with a friend. AR 130. Plaintiff contends that she alleged difficulty interacting with groups of people, but that none of the activities the ALJ described indicated that she socialized with groups of people. Dkt. 12 at 5-6. Indeed, Plaintiff testified at the hearing that "groups of people" that get "too loud, or too busy" cause her anxiety to flare, but that she was able to socialize with friends and family. AR 155-58. The Court therefore agrees with Plaintiff that the ALJ did not identify an inconsistency between Plaintiff's allegations and her social activities.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 6

Next, Plaintiff argues that the ALJ erred in contrasting Plaintiff's participation in CrossFit and weightlifting with her testimony that she was unable to work because she was exhausted. Dkt. 12 at 6. Plaintiff contends that the record does not indicate that Plaintiff engaged in these exercise activities during the adjudicated period, but that she had been able to do them in the past. *Id*. (citing AR 455 (February 2019 treatment note describing Plaintiff's exercise: "Exhausted, but likes to lift weights, do cross fit")). The provider's use of the present tense to describe Plaintiff's feelings about lifting weights and CrossFit does suggest that she currently enjoys those activities, but this statement was repeated verbatim in at least one other treatment note (AR 982 (October 2020)), which indicates that this statement does not necessarily represent a statement made by Plaintiff during or close to the adjudicated period. Other evidence in the record suggests that Plaintiff did not engage in exercise during the adjudicated period. *See, e.g.*, AR 730 (Plaintiff is asked in August 2020 whether she is exercising and reports "Not now"). Accordingly, the Court finds that the ALJ did not point to any physical activities performed during the adjudicated period that are inconsistent with Plaintiff's alleged limitations.

Lastly, Plaintiff argues that the ALJ erred in finding that the objective medical evidence failed to corroborate her allegations and also suggested that her conditions improved with treatment. Plaintiff contends that the ALJ cherry-picked normal mental findings from a record that also includes evidence of suicidal ideation. Dkt. 12 at 8 (referencing AR 518, 730, 757-58). There is some evidence of suicidal ideation before (while she was still working, and on the day that she quit her job) and at one point during the adjudicated period (AR 518, 730, 765, 757-58), but the record also indicates that once Plaintiff's medications were increased, she experienced improvement overall and specifically mentioned a reduction of suicidal ideation. *See* AR 757-68. Although Plaintiff's treatment notes, as Plaintiff emphasizes (Dkt. 12 at 8) reference

ORDER REVERSING THE COMMISSIONER'S
DECISION - 7

depression and anxiety, such findings do not undermine the ALJ's decision because the ALJ listed depression and anxiety among Plaintiff's severe impairments (AR 123) and acknowledged that these conditions caused some deficits. *See, e.g.*, AR 126-27. Plaintiff has not shown that the ALJ erred in finding Plaintiff's alleged mental limitations to be unsupported by the treatment notes.

The Court agrees with Plaintiff, however, that the ALJ failed to provide legally sufficient reasoning to explain why the record failed to support or was inconsistent with Plaintiff's alleged physical limitations. Dkt. 12 at 9. The ALJ summarized many treatment notes, but her summary documents that Plaintiff continued to report pain and other limitations despite treatment, which included surgery, physical therapy, and medication. AR 132-25. A summary of the medical evidence does not constitute a reason to discount Plaintiff's alleged physical limitations and, notably, the Commissioner's defense of the ALJ's assessment of Plaintiff's testimony does not reference this section. *See* Dkt. 13 at 4-7.

Thus, as described herein, the ALJ identified some valid reasons to discount Plaintiff's testimony, but also provided some invalid reasoning. Because the valid reasons are independent from the erroneous reasons, the Court finds that the ALJ's errors are harmless, but notes that because this case must be remanded on other grounds discussed *infra*, the ALJ may reconsider Plaintiff's testimony in light of the expanded record on remand. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

**C.     The ALJ Erred in Discounting Some Medical Opinion Evidence**

Under regulations applicable to this case, the ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported and consistent with the record. 20 C.F.R. §§ 404.1520c(a)-(c). An ALJ's consistency

and supportability findings must be supported by substantial evidence.  *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Plaintiff contends that the ALJ's assessment of multiple medical opinions is insufficient, and the Court will address each disputed opinion in turn.

### 1.   *Treating Rheumatologist John Griffin, M.D.*

In January 2021, Dr. Griffin completed a form opinion describing Plaintiff's physical symptoms and limitations.  AR 722-28.  The ALJ found this opinion unpersuasive, contrasting Dr. Griffin's treatment notes documenting normal reflexes, strength, sensation, gait, balance, and range of motion, with his opinion concluding that Plaintiff could lift/carry less than 10 pounds occasionally, stand/walk less than two hours in a workday, and sit for less than six hours in a workday.  AR 136.  The ALJ also noted that Plaintiff had reported an injury a couple of weeks before Dr. Griffin completed his opinion, and that "there appears to be an element of the claimant's subjective complaints involved in Dr. Griffin's opinion[.]"  *Id*.  Lastly, the ALJ found Dr. Griffin's opinion to be inconsistent with an August 2020 arthritis joint study revealing normal findings as to Plaintiff's hand, foot, knee, and pelvis.  *Id*.

Plaintiff first argues that the ALJ erred in contrasting Dr. Griffin's opinion with normal examination findings because the ALJ herself acknowledged that Dr. Griffin documented abnormal findings in January 2021.  Dkt. 12 at 136.  Indeed, the ALJ referenced Dr. Griffin's abnormal findings of pain and swelling on January 7, 2021 (AR 136 (citing AR 750)), and those findings do not contradict Dr. Griffin's conclusion.  Dr. Griffin noted Plaintiff's painful and/or swollen joints on other occasions as well.  *See, e.g.*, AR 730-31, 739, 743, 745, 746, 748-49.  Dr. Griffin was aware of a normal arthritis joint study in August 2020, but cited other testing that was consistent with a rheumatoid arthritis diagnosis and supported a prescription for pain

medication. AR 737-38. As a rheumatologist, Dr. Griffin had the necessary expertise to interpret the results of the arthritis joint study and the ALJ did not explain why she found those test results to be particularly important, relative to the other testing Dr. Griffin performed. Under these circumstances, the ALJ's finding that Dr. Griffin's opinion was inconsistent with and unsupported by his treatment notes is not supported by substantial evidence.

Although the ALJ found that "there appears to be an element" of Plaintiff's subjective complaints influencing Dr. Griffin's opinion (AR 136), the basis for this finding is unclear. Although Plaintiff did report a fall a couple of weeks before Dr. Griffin wrote his opinion (AR 750), he did not reference the fall in his opinion and instead attributed the limitations to Plaintiff's painful, swollen joints that are documented throughout his longitudinal treatment notes. AR 722-28. It is not clear why the ALJ believed that the support for Dr. Griffin's opinion was tainted by Plaintiff's self-report, and the Commissioner does not defend this line of reasoning. Dkt. 13 at 11-12.

Because the ALJ's assessment of Dr. Griffin's opinion is not supported by substantial evidence, the ALJ erred in finding Dr. Griffin's opinion to be unpersuasive.

    2.    *Primary Care Physician Leia Langhoff, D.O.*

Dr. Langhoff wrote a letter in January 2020 describing Plaintiff's limitations, specifically opining that Plaintiff could stand/walk for a maximum of five minutes at a time, and could sit for 20 minutes at a time. AR 578. Dr. Langhoff also noted that Plaintiff required medication in order to control her anxiety and panic when she had been previously working. *Id*.

The ALJ found this opinion unpersuasive, finding that it was based on Plaintiff's self-report and that none of Dr. Langhoff's examination findings corresponded to the limitations she identified in her letter. AR 136. This line of reasoning is supported by substantial evidence

because the treatment note contemporaneous with Dr. Langhoff's opinion suggests that Plaintiff herself reported all of the limitations that Dr. Langhoff referenced in the opinion. *See* AR 635-36. None of Dr. Langhoff's findings at that time or at other times provide a basis for concluding that Plaintiff was so severely limited as to sitting, standing, and walking. The ALJ reasonably found Dr. Langhoff's opinion to be unsupported and did not err in finding it unpersuasive on this ground.[3]

      3.  *Treating Physician Aaron Anderson, M.D.*

Dr. Anderson examined Plaintiff two weeks after a shoulder surgery in January 2020 and found that she was healing well. AR 631. Dr. Anderson recommended that she keep her range of motion "up to par" and lift no more than five pounds, while avoiding repetitive motions. *Id*. Dr. Anderson recommended that she return for a reassessment in another month. *Id*.

The ALJ suggested that the limitations Dr. Anderson described in this treatment were temporary in light of the context in which they were given, specifically because Dr. Anderson did not indicate that they were permanent and the timing of his opinion suggested that they were temporary. AR 136. The ALJ also found the limitations described by Dr. Anderson to be inconsistent with other evidence showing that Plaintiff continued to improve as she healed. AR 136. The ALJ thus found the limitations described in Dr. Anderson's note to be only somewhat persuasive. *Id*.

The ALJ's interpretation of Dr. Anderson's note is reasonable in light of the note's close proximity to Plaintiff's surgery and Dr. Anderson's indication that Plaintiff's condition would

---

[3] The ALJ also found that Dr. Langhoff's opinion was inconsistent with other evidence in the record (AR 136), but the Court need not address this line of reasoning because the ALJ's proper supportability finding is sufficient. *See Woods*, at 792-93 & n.4 (affirming an ALJ's assessment of an opinion where only the consistency finding is supported by substantial evidence and the ALJ did not enter a supportability finding).

ORDER REVERSING THE COMMISSIONER'S
DECISION - 11

1   need to be reassessed in a month.  AR 631.  These factors suggest that Dr. Anderson did not

2   intend these limitations to persist, and thus the ALJ did not err in finding this opinion less than

3   fully persuasive for the task of assessing Plaintiff's RFC.

        *4. Treating Psychiatrist Michael Domash, M.D.*

5     In January 2021 Dr. Domash completed a form opinion indicating that Plaintiff had many

6   disabling mental limitations.  AR 753-56.  The ALJ found this opinion to be unpersuasive

7   because Dr. Domash's conclusions were unexplained, other than references to Plaintiff's self-

8   reported absenteeism in her prior job.  AR 137.  The ALJ also found the limitations described by

9   Dr. Domash to be unsupported by his treatment notes, and inconsistent with Plaintiff's ability to

10  travel to Hawaii early in the adjudicated period, and also inconsistent with a consultative

11  psychological examiner's findings.  *Id.*

12    The ALJ did not err in finding Dr. Domash's opinion to be unexplained because the

13  opinion consists largely of multiple-choice questions with answers marked, with no explanations.

14  AR 753-56.  The one explanation Dr. Domash does provide references Plaintiff's report of

15  missing one week of work per month due to her physical and mental conditions when she was

16  working her past job (AR 756), but this explanation pertains to Plaintiff's functioning when she

17  was last working, but not during the adjudicated period.  As noted by the ALJ, Dr. Domash's

18  treatment notes document improvement since the time that she last worked.  AR 137.  The ALJ

19  therefore reasonably found that Dr. Domash's opinion was unsupported and did not err in finding

20  it unpersuasive on this basis.  Any error in the ALJ's consistency finding is therefore harmless.

21    **D. The ALJ Did Not Harmfully Err in Assessing the Lay Statements**

22    The ALJ discussed statements written by Plaintiff's husband, Plaintiff's former boss,

23  Plaintiff's former co-worker.  AR 331-39, 350-57, 404, 406.  The ALJ found these statements to

be inconsistent with other evidence in the record, namely: evidence showing that Plaintiff was able to vacation in Hawaii (despite her husband's claim around that time that she was too anxious to leave her home alone and could only leave for an hour per week), as well as evidence that Plaintiff's vision impairment improved with treatment (despite co-workers' description of vision loss) and that she quit her job due to a toxic work environment (in contrast to her co-workers' statements that Plaintiff's deficits left her unable to perform her job duties). AR 138.

The Court agrees with Plaintiff that the ALJ erred in discounting the lay statements based on inconsistency with the evidence pertaining to Plaintiff's vision condition, because the record shows that Plaintiff required eye surgery for double vision after she quit her job, and this evidence corroborates rather than contradicts Plaintiff's co-workers' description of vision problems. *See* Dkt. 12 at 17 (citing AR 542, 664). But the ALJ identified other evidence that is reasonably inconsistent with the lay statements, namely Plaintiff's travel activity and the other representations Plaintiff made regarding the circumstances under which she quit her job. Because the ALJ adequately explained why she discounted the lay statements, the Court finds no harmful error in this portion of the ALJ's decision. *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (holding that the ALJ "may not reject 'significant probative evidence' without explanation" (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984))).

E.   **The ALJ Can Consider the Appeals Council Evidence on Remand**

Because this case must be remanded in light of the error identified herein, the ALJ will have the opportunity to consider the Appeals Council evidence for the first time on remand.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42

U.S.C. § 405(g).  On remand, the ALJ should reconsider Dr. Griffin's opinion, and any other part of the decision as necessary in light of the expanded record.

Dated this 29th day of November, 2022.

*S. Kate Vaughan* (signature)

S. KATE VAUGHAN
United States Magistrate Judge

ORDER REVERSING THE COMMISSIONER'S
DECISION - 14